Next case is Cynthia O'Brien v. Secretary of Veterans Affairs 2010-7098. We'll hear from Mr. Schmidt. Thank you, and may it please the Court. Before I begin, I would like to thank Mr. Goodman for agreeing to in the Court for allowing my appearance in this case. It goes without saying that it is a great honor to present oral argument today, and I am humbled by the opportunity. In the underlying decision on appeal, the Veterans Court correctly determined that the Board committed an error by not applying the rule of law announced by this Court in Wood and De La Rosa, by applying 38 U.S.C. Section 5103A.D., which does not apply to Ms. O'Brien's claim, rather than subsection A. However, the Veterans Court applied A. My apologies, Your Honor? The Veterans Court applied A, didn't it? I would say in name only, only in a very superficial sense. It actually applied the criteria found under subsection D to reach the determination that's before the panel right now. Just to follow up on that. Certainly. Didn't the Veterans Court quote the no reasonable possibility standard during its harmless error analysis? It wasn't just a scarce reference to a statutory site. They quoted the language, right? They did, but they didn't quote an application. What they actually did in the sentence, if you read it out, what they said was the Board's finding that quote was not clearly erroneous. In other words, it seems like a typographical error. It reads as if the Board made that finding, that quotation, and then said that that finding was not clearly erroneous. It does not actually make a finding like the court did in Waters, for instance, that the subsection didn't apply. In fact, I would go further. Even if the Veterans Court had made that explicit, obviously it did not for the reason I just posited, Judge Prost. But even if it had, it actually couldn't. The Veterans Court is actually jurisdictionally barred from making findings in the first instance, so it could make a finding for prejudice that's statutorily obligated to. It couldn't make a finding of reasonable possibility under the first instance. The only findings that by statute it can make that the Board didn't already make has to do with prejudice because it's otherwise authorized by statute. But isn't a determination of prejudice, doesn't that inherently require the court to make a determination that there isn't a significant difference between the determination that was made and the determination that would have been made, i.e., in effect, making a factual determination? So two responses. I'll go to the first half of your question first, which is whether or not that's the right way to make a prejudice analysis. And secondly, the implications of that being a factual finding. You're correct. That is exactly the way a prototypical prejudice analysis works. You would say even if they apply the correct legal standard, this case doesn't change. In fact, this court did just that in De La Rosa, right? The court announced that the Veterans Court below had applied the wrong legal standard but said, well, it doesn't matter because under the correct legal standard, it doesn't change a thing. You have willful misconduct. You can't get benefits if death is due to willful misconduct. So even, and that was, of course, legal prejudice, not factual prejudice. But even if the question is one of factual prejudice, that's not the analysis that was undertaken in this case. The Veteran Court opinion doesn't go, all right, if we apply the correct standard under subsection A, that of reasonable possibility, that threshold isn't met here. It, in fact, applied a different standard entirely. It applied the wrong standard. As we argued, of course, at length in our brief, rather than doing what you're suggesting, Judge Bryson, which is to apply one standard compared to the outcome of the wrong standard and see whether there is or is not a difference. Instead, according to the Veterans Court, there was no prejudice because the record didn't indicate that the late veteran, Mr. O'Brien's disability, which led to his death, was related to service. That was the predicate finding that led to the ultimate finding, my apologies, that there was no prejudice. In fact, I realize I didn't answer the last half of your question, Judge Bryson, about prejudice being a finding effect. There would actually be a jurisdictional bar if we were challenging on the merits, the Veterans Court prejudice finding, if we were asking for a reversal of that finding. And we're not doing that, of course. We're simply saying the standard applied for that finding, the predicate standard of law, the rule of law. That was wrong. And, in fact, I want to correct my brief. This is the perfect time to do it. We asked in our conclusion section for a remedy being remanded to the Veterans Court with directions that there be remand to the Board. On further reflection, I realize that's not the appropriate remedy for the reasons you're citing. It could be the case that on remand, under the correct standard, or under the correct analysis for a prototypical prejudice analysis, the Veterans Court could find factually that there wasn't prejudice. I've pressed my mind and my imagination. I'm not sure how they could. But this Court's limited jurisdiction prevents foreclosing that possibility, so that the correct remedy would, in fact, be remand to the Veterans Court, not necessarily with directions to remand to the Board for the factual jurisdictional reasons you're alluding to, Judge Bryson. But according to the Veterans Court, the lack of prejudice was a function of a lack of indication in the record that the late veteran, Mr. O'Brien's, disability may have been related to service, and therein lies the problem. That standard is the very standard one finds, the criteria one finds under subsection D. So, in effect, if not by intent, and they did cite Judge Lurie's subsection A for this proposition. So, in effect, if not by intent, they applied the wrong statute to show a lack of prejudice in applying the wrong statute, which is, of course, circular. Now, that picture that I just painted is largely meaningless and, in the end, wouldn't connote error if, as the government suggests, the linguistic similarities between the standard applied by the Veterans Court and the standard found under subsection D is not because they applied the wrong legal standard, but because of an overlap between the two standards. That is, there is an overlap of requiring evidence for medical nexus under both subsection A and subsection D. If that argument holds, that would, of course, sustain the government's case, and affirmance would be in order. However, that is an unsustainable interpretation of subsection A for at least three reasons. And I'll go through them quickly at first, because who knows how deeply I'll get into each of them. Thank you, Judge Bresson. I appreciate the compliment. First, as a formal matter, that interpretation of subsection A would require this court to disregard at least two canons of construction, one related to different phrasings within the same statute, and another canon governing, or I would say, presumptions against finding statutory language presumptuous. I, of course, discuss that at length in the reply brief. Secondly, if one were not to take sort of a doctrinal canon approach to the statute, just a reasonable reading of Section 5103A in whole, one finds a very deliberate policy, very deliberate procedure, a very deliberate outline in that statute that would have to be disregarded if subsection A and subsection D2B mean the same thing. The short version of that argument is this. Well, it's a difference between saying they mean the same thing and saying that there's some instances in which there's overlap. Those are two different things, are they not? I don't think anybody is indicating they mean exactly the same thing. But the question that you posited, I thought, was whether or not there were some circumstances where there's commonality between the two. Thank you for allowing me the chance to clarify. If that is the overlap, this is, of course, slightly linguistic, the difference between some overlap and whether they mean the same thing. If the overlap is that in a DIC claim, a death benefits claim like Mrs. O'Brien's had, that in every one of those instances she must also meet the criteria under subsection D, then the overlap becomes total, and then in effect you're saying they mean the same thing. The overlap, you want to call it an overlap, then it's a complete overlap for death benefits claims. And it's probably important to note also, Your Honor, that even whether it's a total overlap or a subtle overlap or a nuanced overlap, that analysis of subsection A vis-à-vis subsection D has already been rejected in the most powerful of terms by this Court. Would, if I'm not mistaken, in this Court's decision, would they're described as wholly different and unrelated criteria, which surely does not connote even subtle overlap, much less the complete overlap that would be the inexorable result of all death benefit claims having to meet the requirement for evidence of a medical nexus. So I mentioned a second ago that even if you didn't want to take a sort of a canon approach, that a reasonable approach looking at the entire statute wouldn't bear the interpretation of subsection A. And the reason is this. This language, the indicates that it may language, is a very strong limitation on VA's very general duty to assist. And it's only found in one place, subsection D2B. It is a limitation on VA's duty to assist that only applies to one kind of claim and to one kind of question within a claim. There are two levels of constraints on that limitation on VA's duty to assist. Interpreting subsection A to include implicitly the same requirement would remove both layers of limitation that we have to assume that Congress, you know, put in linguistically on purpose. And then finally, to the extent that there is any ambiguity in the statute, and I think for the two sets of reasons I just provided there aren't any, but to the extent that there is, this is more or less wishy-washy language. Reasonable possibility indicates that it may. To the extent that any of that connotes ambiguity, that ambiguity, of course, has to be resolved in favor of the claimant under the Supreme Court's decision in Gardner. Surely it goes against the spirit, if not letter of the Gardner, if you find within the, between the lines in subsection A, a requirement for evidence of a medical nexus, which is, of course, a very strong limitation on VA's duty to assist, and it doesn't even apply generally to disability compensation claims under subsection D. So first, the canon approach. Or, but I think I've outlined those three arguments more or less, and I'll reserve the balance of my time, unless, of course, there are any immediate questions. We'll reserve your time, Mr. Schmidt. Thank you, Judge Lurie. Mr. Goodman. Good afternoon, Your Honors. May it please the Court. The argument outlined by the other side leads to a fairly absurd result. The reason is this. They're asking for greater access to a medical opinion for survivors than for the veterans that the statute was designed to provide for. In Wells v. Principi, not cited in my brief, found at 326 F. 3rd, 1381, this Court said that the veterans required to show some causal connection. Of course, D is explicitly provided for veterans seeking a medical opinion. They have to show some causal connection, and Wells was based on that. But in that case, the veterans said, well, what about under A? Under A, I should get it, even if I don't get it under D. And this Court said, no, D is explicit. You have to show some causal connection. This Court went on in Disabled Veterans to say that the three steps outlined in D are, in fact, the definition of necessary, not just an example. So, again, reiterating that a veteran has to say some causal connection in order to get benefits. In this case, if Mr. O'Brien were to himself have sought benefits for his CML, he would have had to provide some nexus. And without providing the nexus, he couldn't get benefits. But Mrs. O'Brien is now suggesting that as Mr. O'Brien's survivor, that she can get access to a medical opinion because A is somehow broader than D. That was explicitly rejected by this Court in Wells and in Disabled Veterans. So it doesn't make any sense to read it that way. And if there's a doubt, this Court in Pelea v. Nicholson said that it seems most unlikely that Congress would have intended to provide more favorable treatments for veterans' widows than it provided for veterans. I appreciate what you're saying. I kind of have a rough reaction to it because, as you heard if you were here for the earlier argument, we're struggling with conclusions that are based on construing a statute based on absurd results. So I'm kind of reluctant to go there. But when you look at the language, but we still, what we're left with is looking at the language of the statute, and clearly the wrong provision was applied. So whether one is tougher or stronger than the other doesn't necessarily mean that the two aren't different and that the board was required, as was the CAVC, to apply the right standard, correct? So your argument only kind of gets you so far in terms of saying one's more stringent and one's less stringent. That doesn't get you off the hook for having to apply the right one in any event, correct? Correct, Your Honor. But if A provides for a medical opinion, there would be no reason for D. If a veteran doesn't have to provide or a DIC claimant doesn't have to provide any evidence of causation, then under A, and gets a medical opinion free from the veteran's administration for that, then there's no reason for D to specifically provide for a medical opinion. I think the difference is in how the statute is written. You can see the intent through the language of the statute, and you don't need to look to legislative history, although we have that too. D says the secretary shall provide an opinion if these three steps are met, if they provide evidence of a disability and some event in service and some nexus. And it's secretary shall, so it's making it very specific that the secretary shall assist the claimant in this particular way. In fact, Sections B, C, and D are all examples of ways the secretary specifically has to meet its obligation in A to assist the claimant. So A is very general and says you must assist all claimants. And then B and C say here's how you assist the claimant to get records. And if the claimant is a veteran himself and not a survivor, then you have to also get additional types of records, that's under C, and under D you have to provide a medical opinion. That's what this court held in De La Rosa. There is confusion by this court's later decision in Wood. To the degree there's a disagreement between those two cases, of course, this panel is bound by the previous decision in De La Rosa and need not follow what the court said in Wood. But both parties, I think, agree at this point that there is confusion between the two. In fact, in their opening brief, Mrs. O'Brien explicitly said that there's some tension between the two cases. If there's tension, it's because Wood, we believe, misread what happened in De La Rosa. Wood said if there's no disagreement about facts, then ‑‑ I'm sorry. Wood interpreted De La Rosa as saying that if there's no disagreement about the facts, this court could go ahead and say it's harmless error because there's not a factual contention on the table. But as Mrs. O'Brien correctly points out, the problem with that analysis is that it still requires this court to apply law to fact and to do some assessment of how important the factual distinction was, or factual disagreement, I mean. In De La Rosa, there was, in fact, medical evidence of a nexus, but the board found that that wasn't very probative. So there was a factual dispute even as to nexus in De La Rosa. Of course, here there's no evidence at all. And the board has explicitly found, just like the board found in De La Rosa, found that there is no service connection and there's no indication of service connection. Nonetheless ‑‑ You're not suggesting that we necessarily have to reach that discrepancy, that that's necessary for us to, that even under Wood, we can distinguish this case. Even under Wood, this case would fall within the De La Rosa rule because, exactly the point I just made, there is no factual evidence at all of a service connection here. If we look at the facts of this case, what happened is Mrs. O'Brien thought that her husband had had CLL, not CML. And CLL is presumed, based on exposure to Agent Orange, to be service connected. But, in fact, he had CML, so there's no evidence in the record at all of service connection here. So that falls within the De La Rosa rule, even as articulated by Wood. So, for that reason, as we explained in the second half of our brief, this Court should affirm. But, in addition, this Court could, of course, rely on De La Rosa without looking to Wood if this Court found a discrepancy. And the further point, which was the opening part of our brief, is that the Veterans Court, in fact, applied A, did not apply D. So this Court need not reach any of that and shouldn't reach any of that because the Veterans Court applied the right standards. So all of these questions are not really on the table. But if this Court were to disagree with us... So you say our first task is to read the Veterans Court opinion and draw an inference as to whether or not they were actually using the right statutory provision. And if they were, that's the end of the case. If they were, exactly. It doesn't extend that long. What would be the disposition, then? Would it be that we would affirm under that approach or vacate for lack of jurisdiction, or dismiss for lack of jurisdiction? Do we have jurisdiction? We don't have jurisdiction, I take it, to decide whether the Veterans Court was correct in making a factual determination, I'll call it factual, of harmless error. Right? That we can't review the Veterans Court's determination of harmless error, absent the claim of some legal problem with the approach employed by the Veterans Court. So your opposing counsel is arguing that there was a legal problem with the approach. You're saying, well, you don't think so, but I suppose it would be the case, would it not, that the fact that the opposing counsel has raised a legal contention, we have jurisdiction at least to address that legal contention? Yes. So the result, I take it, maybe I'm answering my own question, but do you agree that the result, then, is not that we lack jurisdiction, but that, as you view the case, we should affirm? That's right, Your Honor, that you should affirm because with the conclusion that the Veterans Court applied the right subsection, and that ends the case, because anything beyond that would be beyond this court's jurisdiction. Okay. All right. I withdraw the question. I hope I answered it rather than forcing you to withdraw it. You did. So under any of those various methods, this court could affirm, not dismiss, affirm for that reason. That's our first argument. Secondly, this court could affirm under Wood because there's no factual evidence that there's a service connection here, and the Board explicitly found that. So even under Wood's explanation of what Della Rosa had done, there's no factual dispute because there's no evidence of nexus. And under Della Rosa, which we contend is a different analysis than Wood applied, then in all these situations, situations like this, D is sufficient because D provides greater protections for the veteran. And when Congress passed D, they explicitly said that their intent was to provide more access to medical opinions for veterans. Reading it the other way suggests that D limits it for veterans but leaves it open for DIC claimants and other survivors. And that doesn't seem like that was what Congress was trying to do, both from the language of the statute and from the legislative history. If there are no further questions, we expect to request that you affirm it. Thank you very much. Mr. Schmidt has rebuttal time. Thank you, Your Honor. I only have rebuttal points for the absurd result argument and to the mooting argument, that is, if subsection A requires a medical opinion, that would moot subsection D. I don't have anything to add about the Wood versus the Della Rosa discussion. I covered it at length in the reply brief, although I'm more than happy to answer questions about it if they linger on the panel. As to the absurd result, I don't know whether it's good or bad policy to make medical examinations more or less available for widows vis-a-vis veterans, but it's surely not absurd. In fact, I could imagine a number of reasonable reasons, rational reasons why Congress would make that distinction. First, there are many more disability compensation claims than death benefits claims. And so just as a matter of cost constraint, I could imagine Congress enacting subsection D, which limits the very general duty to assist under subsection A, putting the onus on the veteran to present evidence of a current disability, present some indication that there may be a nexus, and assuming, of course, that the record doesn't already foreclose the question. That's not absurd. Yet another rationale could be that most veterans, disabled veterans, are probably younger by average than widow claimants. That is, are in a more productive era of their life, and thus maybe it's less onerous, although onerous still, for the average veteran claimant than for the average widow claimant to obtain an opinion on their own. Any of those utterly reasonable and rational bases could lead to a distinction that would make widows more able to get medical opinions from VA than veterans. But we don't have to keep supposing. Oh, a third one, okay. Which just as a policy matter, widows are – it's tougher for them to prove their case, obviously, than for the veteran who's alive to prove their case. And so Congress recognized that there were just some extraordinarily special burdens placed on someone who's seeking benefits after someone's death. Medical exams are not available. That's right. I couldn't have said it better myself. Thank you. Now, as to the mootness argument, that is, if Subsection A requires a medical opinion, there's no need for Subsection D. Actually, there's no mootness because even a disability compensation claimant has to satisfy both provisions. If a disability compensation claimant checks all the boxes under Subsection D2, which is A through C, if it's not reasonably possible that providing an examination, even though all those boxes are checked, VA won't have to provide an examination. I'll give you an example. A person is claiming disability compensation who, in lay parlance, is a veteran. He has a disability. He has evidence that he hurt his leg in service. He still hurt his leg, so he checks all the boxes under Section 5103A.D. But he was dishonorably discharged. Under Subsection A, there's no reasonable possibility that providing an exam will aid and substantiate this person's claim because veteran status is a necessary condition to service connections. So they work together. They don't work either A or B. It's A for everyone. For disability compensation claimants, these are going to be limitations on VA's duty to assist. So there isn't a mootness concern in finding the need for medical examinations under A. And, in fact, the legislative history, which I think we cited in our initial brief, makes it quite clear that the enumeration of Subsection D and Subsection B and Subsection C was never meant to limit VA's duty to assist for claimants who don't fall under those umbrellas. And unless there are any further questions, that's all I have. Thank you.